## THE STATE ex rel. CHICAGO, BURLINGTON, & QUINCY RAILROAD COMPANY v. EDGAR B. WOOLFOLK, Judge, and THOMAS M. McGINNIS, Prosecuting Attorney.

### In Banc, December 21, 1916.

1. **INJUNCTION: To Prevent Crime: Public Nuisance.** The power of a court of equity to enjoin the doing of acts threatening irreparable injury to property rights, or which would constitute a public nuisance, cannot be divested because the performance of such acts would be a violation of the criminal law; on the other hand, a cour of equity is powerless to enjoin the commission of any crime not violative of property rights, nor involving the creation of a public nuisance.

2. ——· **Public Nuisance: Allegation: Conclusion of Law.** An allegation in the petition for injunction that the acts of the defendant railroad company in transporting and delivering large quantities of intoxicating liquors, including whiskey and beer, at named towns in the county, to "boot-leggers," and other persons engaged in the illegal sale of intoxicating liquors without having or maintaining any place of business, constitute a public nuisance, is only expressive of a legal conclusion, and unless other allegations make a case to which the words "public nuisance" are legally applicable the petition is not helped by the insertion of those words.

3. ——: ——: **Necessary Allegation: Causal Connection.** A petition for injunction charging that the acts of defendant constitute a public nuisance, which fails to set out facts showing that the acts are the proximate and efficient cause of the creation of a public nuisance, is insufficient. A court of equity cannot enjoin any transaction, however violative of the criminal law, which does not bear such a causal connection to the public nuisance averred in the petition.

4. ——: ——: **No Causal Connection: Transportation and Delivery of Intoxicating Liquors.** The transportation by a railroad company of intoxicating liquors to certain specified stations in a county which has adopted the Local Option Law and their delivery there to "boot-leggers" and other persons who maintain no place of business, do not in and of themselves necessarily produce such a degree of popular intoxication as to create a public nuisance. The transportation and delivery of intoxicating liquors do not alone produce the intoxication; and unless the petition alleges that the railroad company is in some way connected with the sale to and distribution among the consumers of the liquor, or does some act which necessarily creates a state of general drunkenness or disorder it does not charge the company with a public nuisance.

5. ——: ——: **Criminal Act: Delivery of Intoxicating Liquors.** A court of equity is possessed of no power to enjoin the mere violation of those criminal statutes (Secs. 7227, and 7228, R. S. 1909) which forbid, under penalties, the receiving, storing, keeping or delivering, as agent or otherwise, of intoxicating liquors, without a license as a dramshop-keeper or wholesaler, or in any county that has adopted the Local Option Law; but it does not follow that a railroad company or any other person will be permitted with impunity to store or deliver such liquors in violation of those statutes.

## Prohibition.

WRIT GRANTED.

*M. G. Roberts* and *Hays, Heather & Henwood* for relator.

(1) The real and vital question in the case is this: The facts pleaded in the information do not authorize the Pike Circuit Court as a court of equity to entertain the proceeding and pass a decree. (a) The bill exhibits no equity and is not susceptible of any conceivable amendment whereby it can be made to show jurisdiction in a court of equity over the subject-matter. The defect is not of form but of substance. It is true the bill may, by liberal construction, be held to state that relator's alleged acts constitute a "public nuisance." Such a conclusion upon the part of the pleader is negatived however by the very facts from which it is drawn. The presence of that allegation lends no support to the bill if the facts show the acts do not constitute a public nuisance. Ex parte Laymaster, 260 Mo. 613; In re Chambers, 182 S. W. 775. (b) The bill does not allege any facts even tending to show that relator was conducting a public nuisance, as that term is known in law, but, on the contrary, it shows upon its face that the primary purpose of the bill is to enforce a criminal statute by injunction. The injunctive relief sought against the relator is not a mere incident to the prevention of any particular place being so used as to constitute a public nuisance. This

court has held that courts of equity have no jurisdiction to enjoin the mere breach of the criminal law. State ex rel. v. Canty, 207 Mo. 439; State ex rel. v. Lamb, 237 Mo. 437; State ex rel. v. Kirkwood Club, 187 S. W. 819; Ex parte Laymaster, 260 Mo. 613. (c) Neither the illegal sale nor the transportation and delivery of intoxicating liquors was a public nuisance at common law, nor has either been made so by statute. The term "public nuisance" is necessarily applied and limited to a fixed place where something .occurs or transpires which the law declares .to be a nuisance to the community at large, because it is not only injurious to public safety and good morals but is also, and primarily, public in its nature and in its manifestations. State ex rel. v. Schweichardt, 109 Mo. 496; 17 Am. & Eng. Ency. Law (2 Ed.), p. 318; Ex parte Laymaster, 260 Mo. 620; State ex rel. v. Kirkwood Club, 187 S. W. 819. (d) It is a matter of common knowledge that the commodities which a railroad transports it delivers at its stations or warehouses. There the relator's connection ¬with the· liquor shipments in question, presumably and so far as alleged in the bill, ends. There is no causal connection between relator's act as a com-. mon carrier in delivering the liquor and the subsequent sale by the consignee to consumers, and certainly no causal connection between the delivery to consignees and the acts done by the consumers of the liquor after they have purchased and consumed the liquor. To. make the relator liable for maintaining a public nuisance it must appear that the relator's act was the direct and proximate cause of the final criminal result, and it must appear that the defendant intentionally set in operation a cause or agency that is adequate to accomplish the completed offense of maintaining a public nuisance. State v. Rankin, 2 S. C. 438, 16 Am. Rep. 737; Comm. v. Harrington, 3 Pick. (Mass.) 26.

*Thomas B. McGinnis* for respondent.

BOND, J. —I. Upon the presentation of its petition for a writ of prohibition a provisional writ was awarded to relator by this court, whereupon the respondents, the judge and prosecuting attorney of Pike County, Missouri, filed a demurrer, on the ground, first, that the petition for prohibition included an allegation that other prosecuting attorneys had instituted like suits to the one sought to be prohibited in this case; second, that the petition itself stated no facts to warrant the issuance of the writ. Thereupon the parties entered into a stipulation that this proceeding should be considered at issue upon the demurrer to the petition and that if the demurrer should be sustained, then the provisional writ should be quashed, and if the demurrer should be overruled, that final judgment should go against respondents without further leave.

The object of this proceeding is to prevent the circuit court of Pike County from considering, on its own chancery side, the causes of action alleged in a petition, filed therein by the respondent prosecuting attorney, stating in substance, his official position, and that the defendant corporation is a railroad carrier in that county maintaining offices where it has heretofore delivered commodities, including intoxicating liquors, to persons to whom they were consigned; that on the 23rd of November, 1911, Pike County, outside the corporate limits of the city of Louisiana therein, adopted a Local Option Law of this State; that for many years divers persons in said county had been and are engaged in the illegal selling, storing and delivering of intoxicating liquors, including beer and whisky, in violation of said Local Option Law and without any authority so to do; that some of said persons maintain places of business nominally as drug stores and other places of business, when in truth they are not engaged in any legitimate business whatever; that other persons are engaged in the illegal sale and delivery of such intoxicating liquors without having or maintaining any places of business and are commonly designated as "boot-leggers;" that by reason of such illegal sales

and delivery of liquors, including beer and whisky, divers persons have become and continue so to become intoxicated and "in such condition disturb and destroy the peace and endanger the persons and the property of the good people of said county at the places of Ashburn, Annada and Clarksville, and to the extent that the same has become a menace to society and to property and a great nuisance, and all greatly to the annoyance and inconvenience of the good people of said Ashburn, Annada and Clarksville, and their respective communities." Plaintiff further states that the defendant, knowing that such persons are and have been engaged in such illegal selling and delivering of such intoxicating liquors, and in such lawless and disorderly conduct, has transported and continued to transport and deliver to said persons large quantities of intoxicating liquors, including beer and whisky, at its stations at the said Ashburn, Annada and Clarksville, and its offices at said places in Pike County, Missouri, and will continue to so transport and deliver to such persons such intoxicating liquors, including beer and whisky, is in violation of the law, and that by so doing defendant aids and abets said parties in the illegal sale and delivery of and traffic in said intoxicating liquors, including beer and whisky, and in encouraging and promoting illegal sales and deliveries of such intoxicating liquors in said county, to the great scandal, inconvenience, annoyance and disturbance of the people of said county.

"Plaintiff further states that it has no adequate remedy at law in the premises.

"Wherefore plaintiff prays that the defendant be perpetually enjoined from receiving and transporting and delivering intoxicating liquors, including beer and whisky, to persons at such places aforesaid, to-wit, Ashburn, Clarksville and Annada, in said Pike County, Missouri, and that in the meantime, until a hearing of this cause can be had, the defendant be temporarily restrained from so doing and for other and proper relief."

In the absence of the circuit judge a temporary restraining order was awarded upon the foregoing petition by two judges of the county court. Thereafter, the petition was filed in the office of the circuit clerk and presented to respondent Edgar B. Woolfolk, the judge of said court in chambers, at the instance of relator, who then moved the circuit court to dissolve the injunction for specified reasons, one being that the petition was without equity on its face. This motion was overruled and thereupon the judge of said circuit court awarded a modified restraining order, enjoining the defendant railroad from receiving for transportation or delivery "at the towns of Clarksville, Annada and Ashburn in Pike County, Missouri, or either of said towns, any intoxicating liquors, including beer and whisky, at any of the station buildings or offices of said company, defendant herein, intended by any persons interested in such intoxicating liquors, including beer and whisky, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of the law of the State of Missouri, respecting the handling, selling, storing and dispensing of intoxicating liquors; and that said defendant is further enjoined and restrained from receiving for transportation or delivery at either of said towns, any of said intoxicating liquors consigned to any person who bears the reputation of and is commonly known as a 'boot-legger' or the manager or proprietor of any 'blind tiger' or to the manager or proprietor or any other person or co-partnership engaged in the unlawful storage, dispensing or selling of intoxicating liquors in any of said towns," etc., until the further order of said court. Upon the award of this temporary injunction, the relator, the defendant in said suit, entered its appearance in said cause, which was placed on the calender of said circuit court for trial at the next term thereof, and, thereupon said defendant in said cause filed its application in this court for a writ of prohibition against the further entertainment of jurisdiction thereof by the circuit court of Pike County.

The issues were joined by the demurrer and stipulation above referred to.

II.   The action sought to be restrained by our writ of prohibition is a suit brought by the State through one of its prosecuting attorneys to enjoin the relator here, the defendant there, from doing certain acts in violation of the sections of the statutes governing the conduct of persons, other than licensed dramshop keepers, or authorized wholesalers of liquor residing in any county which has adopted the Local Option Law (R. S. 1909, secs. 7227, 7229), upon the theory that the acts in question constitute a public nuisance.   The power of equity to enjoin the doing of acts threatening irreparable injury to property rights or which would constitute a public nuisance, is inherent and has been exercised, both in England and America, by courts of chancery since their evolution as a distinct tribunal, nor can this power be devested because the performance of *such* acts may be a violation of the criminal law.   On the other hand a court of equity is powerless to enjoin the commission of any crime not violative of property rights nor involving the creation of a public nuisance, for the reason that it has no jurisdiction to enforce the criminal law nor to prevent the performance of any act of a criminal nature which does not necessarily prejudice private or public rights subject to its jurisdiction and control.   [1 Joyce on Injunctions, sec. 60a;   14 R. C. L. 379, sec. 80; Shoe Co. v. Saxey, 131 Mo. l. c. 221;   Kansas City Gunning Co. v. Kansas City, 240 Mo. l. c. 675;   State ex rel. v. Lamb, 237 Mo. l. c. 457;   In re Debs, 158 U. S. l. c. 593;   Dobbins v. Los Angeles, 195 U. S. 223.]

It is clear, at a glance, that the petition on behalf of the State was framed, not to prevent any irreparable injury to property rights, but to prevent the doing of certain acts relating to the storing, delivery and transportation of intoxicating liquors (referred to in the statutes above cited), upon the theory that the se-

*Injunction: Public Nuisance.*

quence of such violations of the statute would be a public nuisance. It is, therefore, only necessary to consider whether the allegations of the petition for injunction present a case invoking the powers of equity to enjoin such a nuisance.

Obviously the use of the terms "public nuisance" is not sufficient for that purpose, for these are only expressive of a legal conclusion, and unless the allegations of the petition make a case to which these terms are legally applicable, the pleading is not helped by their insertion in it. We have set out that portion of the petition filed in the lower court which refers to and describes the acts and doings of the defendant there (relator here). It will be seen from this language of the petition that the petitioner wholly fails to set forth any facts showing that the things done by relator were the *proximate and efficient cause* of the creation of a public nuisance. No court of equity can enjoin any transaction however violative of the criminal law on the part of the defendant, which does not bear such a causal relation to the public nuisance averred in the petition. None of the acts alleged to have been done by relator—i. e., the transportation of intoxicating liquors to certain stations in a specified portion of Pike County and the delivery thereof to the consignees—in and of themselves necessarily produced such a degree of popular intoxication as to create the public nuisance alleged in the petition to have followed the deliveries by relator of "intoxicating liquors, including beer and whisky," in Pike County. As far as the allegations of the petition are concerned they amount to nothing more than an allegation of the sequence of such a condition, not its necessary result. In this respect the petition is a type of the fallacious reasoning expressed by *post hoc, ergo propter hoc*. In order to connect the relator with the public nuisance, alleged in the petition to have resulted from the drunkenness and disorder referred to, it was indispensable that the plaintiff should show that these were caused directly by the mere act of the defendant in transporting and

delivering such commodities in Pike County, or that it participated in bringing about this condition. The subsequent happening of such a state of intoxication did not establish that it was caused by the act of the relator, there being no allegations that it was concerned either in the sale or distribution of intoxicating liquors to or among the people of this portion of Pike County, or that it did any act which necessarily created a state of general drunkenness and disorder at the places referred to in the petition.

It necessarily results from a consideration of the allegations in the injunction suit filed in the court below that their sum and substance was an averment of the violation of the three sections of the criminal law supra, which forbade under penalties, the receiving, storing, keeping or delivering, as the agent or otherwise, of intoxicating liquors, without a license as a dramshop-keeper or wholesaler, or in any county that had adopted the Local Option Law. It follows, under the principles above stated and in view of the restricted allegations contained in the petition for injunction, that a court of equity is possessed of no power to enjoin the mere violation of the provisions of these criminal statutes (R. S. 1909, secs. 7227, 7229). Neither does it appear from its tenor that the defective petition could be so amended as to state a case within the jurisdiction of a court of equity, nor has the respondent favored us with any suggestions as to its amendment.

III. While we cannot escape the conclusion that the trial court acted without jurisdiction of the subject-matter in awarding the temporary injunction, it does not follow that either the relator or any other persons will be permitted to disobey with impunity the statutes governing the storing (except section 7226, held unconstitutional in State v. Rawlings, 232 Mo. 544) and delivery of intoxicating liquors; for those statutes are a part of the criminal law and should be enforced through the process of the criminal courts against all violators and it is the duty

Criminal Act.

of the prosecuting attorney to see that this is done.
It results. from what has been said that our writ
of prohibition against further action in the injunction
suit filed in the trial court against relator shall be
and is made permanent. All concur.